IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VANDELAY HOSPITALITY GROUP LP D/B/A HUDSON HOUSE, Plaintiff | § § § § § § § § § § § § | CIVIL ACTION |
| VS. | | NO: 3:20-CV-01348-D |
| | | JUDGE: Sidney A. Fitzwater |
| THE CINCINNATI INSURANCE COMPANY, BARON CASS AND SWINGLE COLLINS COMPANY, LLC Defendants | | |

**DEFENDANT THE CINCINNATI INSURANCE COMPANY'S
MOTION TO DISMISS AND MEMORANDUM OF SUPPORT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), The Cincinnati Insurance Company ("Cincinnati") moves to dismiss this case because the Plaintiff fails to state a claim on which relief may be granted. Based on the allegations of the Amended Petition ("AP") and the language of Cincinnati's insurance policy ("the Policy"), Plaintiff cannot prove its claim.

The insurance policy at issue supplies property insurance coverage. It is designed to indemnify loss or damage to property, or related loss of income, such as in the case of a fire or storm. Plaintiff demands the policy's Business Income and Civil Authority insurance coverages. But, because they are part of a property insurance policy, these coverages protect Plaintiff only for income losses tied to direct physical loss or damage to property, not for economic loss caused by efforts to protect the public from disease. These coverages do not apply in the absence of direct physical loss to property. Yet, Plaintiff's allegations establish that it has not sustained any direct physical loss. Rather, Plaintiff alleges that the Coronavirus pandemic spreads among

humans, not that there was any direct physical loss to property. Well-established Texas law shows that Plaintiff does not allege the required direct physical loss. *See e.g., Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 753 (Tex. 2006).

In addition to the requirement that there be direct physical loss to property, the Civil Authority coverage requires a government order prohibiting access to Plaintiff's premises. The orders Plaintiff alleges do not do this. Rather, those orders are directed to the need to keep people apart by keeping them at home.

For all of these reasons, and for the other reasons established below, Plaintiff's Complaint should be dismissed.

## I. The Facts

### A. Allegations of the Complaint

The Complaint includes the following allegations:

- Plaintiff owns and operates three (3) Vandelay restaurants, two (2) Hudson House locations and a Drakes Hollywood, all located in Dallas County, Texas. . . . (AP ¶ 13; Pg. 4).

- Plaintiff was forced to suspend or reduce business at all of its restaurants due to COVID-19 and the resultant closure orders issued by civil authorities in Texas. (AP ¶ 16-34; Pgs. 5-9)

- Cincinnati issued Policy No. ECP0495629 to Plaintiff for a policy period of July, 6, 2019 to July 6, 2020, including a Business owners Special Property Coverage Form. Policy No. ECP0495629 is attached hereto as **Exhibit A** (AP ¶ 15; Pg. 5).

- On March 19, 2020, the State of Texas issued an Executive Order limiting gatherings to 10 or more people in a confined space. This Order is no longer in effect as of May 1, 2020. (AP ¶ 26; Pg. 7).

- On March 24, 2020, the Dallas County issued a civil authority order requiring the closure of non-essential businesses, which included pubs, record stores, and live music venues. (Restaurants were deemed "essential" for purposes of the order and were not required to shut-down). (AP ¶ 28-29; Pg. 7).

Plaintiff's Amended Petition contains six causes of action: 1) Breach of Contract – Anticipatory Breach/Repudiation; 2) Breach of Good Faith and Fair Dealing; 3) Violation of Texas Prompt Pay Act; 4) Violation of the Texas Insurance Code; 5) Declaratory Judgment – Business Income Coverage; 6) Declaratory Judgment – Civil Authority Coverage.

### B. Plaintiff's Policy

Cincinnati issued Policy No. ECP0495629 to VANDELAY HOSPITALITY GROUP LP D/B/A HUDSON HOUSE for the policy period July 6, 2019 to July 6, 2020. The pertinent form in the Policy for purposes of Plaintiff's claim and Complaint, and thus for this Motion, are forms FM 101 05 16 and FA 213 05 16 which have been attached as Exhibit A. *See* ECP PAGEID# 2640, 111-119.

The requirement of "direct physical loss" is a core element in property insurance policies like Plaintiff's. For example, direct physical loss to the Plaintiff's property is a requirement for Business Income coverage:

> We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The suspension must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown on the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss.

(FA 213 05 16 at p. 1). The term "loss" is defined to mean *physical* loss or damage. (FM 101 05 16 at p. 38.) Accordingly, direct physical loss is required for Business Income coverage.

The requirement of direct physical loss additionally appears in the threshold requirement for any coverage requiring that there be a Covered Cause of Loss:

> SECTION A. COVERAGE
>
> We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

(FM 101 05 16 at pp. 3)

Covered Cause of Loss is defined as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." (FM 101 05 16 at pp. 18-19, 21). "Loss" is defined, in relevant part, as physical loss or physical damage. Accordingly, direct physical loss is a necessary element of Covered Cause of Loss. (FM 101 05 16 at pp. 18-19, 21). Therefore, because it is an element of Covered Cause of Loss, direct physical loss is an integral part of the Civil Authority coverage. (FM 101 05 16 at pp. 19, 21).

Under Texas law, examples of accidental direct physical loss include damage caused by fires, ice, hail, and winds, *i.e.*, perils that cause actual, demonstrable physical damage to property. Moreover, Plaintiff's request for declaratory judgment by this Court contravenes 100 years of Texas insurance precedent and definitive rulings of the Texas Supreme Court regarding the interpretation of insurance policies. *E.g., Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 753 (Tex. 2006).

"[I]t is the court's duty to give the words used their plain meaning." *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). "If policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and we construe it as a matter of law." *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). The Texas Supreme Court has clearly stated that "Texas courts must stick to what [insurance] policies say." *Fiess*, 202 S.W.3d at 753. They "must enforce the contract as made by the parties, and cannot make a new contract for them," even "when a crisis arises." *Id.*

To impose liability retroactively, as Plaintiff asks the Court to do, does not serve public policy, but would arbitrarily impose an inequitable burden on Cincinnati to cover a risk that its

policies explicitly and unambiguously informs policyholders is not covered and for which it did not charge a premium. Such a result would contravene settled Texas law in insurance cases and would violate Cincinnati's due process rights and other constitutional guarantees.

In addition to the direct physical loss requirement, Civil Authority coverage requires that an insured suffer actual loss of Business Income caused by specific actions of a civil authority. Those civil authority orders must meet the following criteria:

> *(a)* ***Access*** to the area immediately surrounding the damaged property ***is prohibited*** by civil authority as a result of the damage; and
>
> *(b)* The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the ***Covered Cause of Loss*** that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(FM 101 05 16 at pp. 19, 21). (Emphasis added). Accordingly, Civil Authority coverage requires both direct physical loss to property other than the insured's property and prohibition of access to the insured's property as a result of that direct physical loss.

## Law and Argument

**II. Motion to Dismiss Standard**

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face." *Mission Toxicology, L.L.C. v. United Healthcare Ins. Co.*, 2018 WL 2222854, at *3 (W.D. Tex. Apr. 20, 2018) (Ezra, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The '[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Court may take judicial notice of the underlying insurance policies, which are referenced in the complaint and are central to Plaintiff's claims. *Mission Toxicology*, 2018 WL 2222854, at *3; *see Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### III. There Is No Direct Physical Loss and Accordingly No Business Income Coverage

As shown, the Policy states that it only provides coverage for direct physical loss. But, Amended Petition does not allege facts showing any direct physical loss. Accordingly, Plaintiff cannot possibly prove its claim.

#### A. There Is No Direct Physical Loss To Plaintiff's Premises And Thus No Business Income Coverage

Plaintiff's conclusory allegation that civil authority orders prohibiting access to the premises of Plaintiff's restaurants caused a "loss" to property (AP ¶ 14) does not identify an "accidental direct physical loss to" property or explain what it is. This allegation fails "'to state a claim to relief that is plausible on its face'" or to allow a "'reasonable inference that the defendant is liable for the misconduct alleged.'" *Mission Toxicology*, 2018 WL 2222854, at *3 (citations omitted).

Even if Plaintiffs had alleged that the coronavirus was present at their properties (which they have not), that would not constitute "accidental direct physical loss." The requirement that the loss be "physical" is "'widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.'" *Hartford Ins. Co. v. Miss. Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) (citation omitted); *see also Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235

(3d Cir. 2002); *Univ. Image Prods., Inc. v. Chubb Corp.*, 703 F. Supp. 2d 705, 711 (E.D. Mich. 2010), *aff'd sub nom. Univ. Image Prods., Inc. v. Fed. Ins. Co.,* 475 F. App'x 569 (6th Cir. 2012).

In Texas, examples of direct physical loss include structural damage from hurricane winds, *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597 (Tex. 2015); hailstorms, *State Farm Lloyds v. Kaip*, 2001 WL 670497, at *2–3 (Tex. App.—Dallas June 15, 2001); and ice storms, *Allianz Cornhill Int'l v. Great Lakes Chem. Corp.*, 2006 WL 778618, at *6 (S.D. Tex. Mar. 24, 2006). The above mentioned cases all involve some form of physical alteration of the structural integrity or nature of property. A virus, which does not physically alter the structural integrity or nature of property, does not constitute direct physical loss.

A case factually analogous to the present case is *Mastellone v. Lightning Rod Mut. Ins.Co.. See Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App.3d 23, 2008-Ohio-311, 884 N.E.2d 1130. The relevant policy language in *Mastellone* was the same as that in the Cincinnati Policy. It too required "direct physical loss," also referred to in *Mastellone* as physical injury to property. *Id.* at 61-62. *Mastellone* holds that mold on building siding did not constitute physical injury because it did not adversely affect the building's structural integrity.

In this context, *Mastellone* rejected the argument that dark staining on the siding was physical injury, because the staining was "only temporary and did not affect the structure of the wood." The mold could be removed via cleaning, and its presence "did not alter or otherwise affect the structural integrity of the siding." *Id.* at 61-69. *Mastellone* cited a leading insurance treatise, which states, "The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental

economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property". 10A *Couch on Ins.* § 148:46 (3d Ed.1998). There was no coverage in *Mastellone*.

Similarly here, the alleged presence of the Coronavirus did not cause direct physical loss to property. The loss Plaintiffs allege is caused by the presence of the virus in our world, not by any physical damage or effect on Plaintiffs' building or someone else's property. Indeed, premises where the virus has been confirmed to be present, such as hospitals and nursing homes, have remained open. This is because those properties are themselves undamaged. Moreover, even if Coronavirus could cause direct physical loss to the premises, which it cannot, Plaintiffs do not allege that the Coronavirus was ever present on any of their premises. Indeed, they seem to admit otherwise. (AP ¶ 39).

Moreover, even if the virus was shown to be present on Plaintiff's premises, the Coronavirus did not affect the structural integrity of the buildings. Indeed, the virus can be removed by cleaning any potentially affected surface with a commonly available household disinfectant. "The virus that causes COVID-19 can be killed if you use the right products. EPA has compiled a list of disinfectant products that can be used against COVID-19, including ready-to-use sprays, concentrates, and wipes." (*See* CDC Reopening Guidance for Cleaning and Disinfecting (5/4/2020), attached as Exhibit B; *see also* CDC, *Cleaning and Disinfection for Households*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cleaning-disinfection.html (accessed May 19, 2020)).

Accordingly, the Coronavirus, much like the mold in *Mastellone*, does not physically alter the structure of property. This includes the type of property that would be in Plaintiff's premises, such as drywall or counters. Plaintiff does not allege that the virus physically altered the structure

of its property. Accordingly, there was no direct physical loss, and thus no Business Income or Extra Expense coverage.

### B.     American Case Law Is Overwhelmingly Consistent With *Mastellone*

Numerous court decisions nationwide support *Mastellone*, holding that direct physical loss requires actual, tangible, permanent, physical alteration of property. *See e.g.*, 10A *Couch on Ins.* § 148:46 ("The requirement that the loss be 'physical,' given the ordinary definition of that term, ***is widely held*** to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." (Emphasis added)).

Reaching the same conclusion as *Mastellone* is *Source Food Technology, Inc. v. U.S. Fidelity & Guarantee Co.,* 465 F.3d 834, 838 (8th Cir. (Minn.) 2006). There, the U.S. government imposed an embargo on the import of Canadian beef following the detection of Mad Cow Disease in Canadian cattle. Despite no evidence that *its* beef was contaminated, Source Food could not import it into the U.S. because of the embargo. It claimed lost business income under its insurance policy. That policy, like Plaintiff's, provided coverage if the suspension of business operations was "caused by ***direct physical loss to Property***". *Source Food*, 465 F.3d at 835. The insured argued "that the closing of the border caused direct physical loss to its beef product because the beef product was treated as though it were physically contaminated by mad cow disease and lost its function." *Source Food*, 465 F.3d at 836. The court rejected this argument: "To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word 'physical' meaningless." *Source Food*, 465 F.3d at 838.

Similarly, *Philadelphia Parking Authority v. Federal Insurance Co.,* 385 F.Supp.2d 280, 289 (S.D.N.Y. 2005), holds that there was no direct physical loss to an airport parking facility that had to close on September 11, 2001 due to the terrorist attacks. And, in *Crestview Country Club, Inc. v. St. Paul Guardian Insurance Co.*, 321 F.Supp.2d 260, 264 (D. Mass. 2004), there was no direct physical loss to a golf course. Rather, the modification of how a hole on the course played that was made because of the loss of a tree did not constitute direct physical loss to the course because, "physical must be given its plain meaning – e.g., 'material.'" *See also Pentair, Inc. v. Am. Guar. & Liab. Ins. Co*., 400 F.3d 613, 616 (8th Cir. 2005); *City of Burlington v. Indem. Ins. Co. of N. Am*., 332 F.3d 38, 44 (2d Cir. 2003); *N.E. Ga. Heart Ctr., P.C. v. Phoenix Ins. Co*., 2014 WL 12480022, at *7 (N.D. Ga. May 23, 2014); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co*., 187 Cal. App. 4th 766, 780 (2010).

Likewise, a court in New York considered whether the Coronavirus constituted direct physical loss and held that it did not. *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1 at p. 15. *Social Life* denies a motion for preliminary injunction. The court's principal basis for that denial is the absence of direct physical loss; direct physical loss is not caused by a virus. As the judge deciding *Social Life* stated during argument, the virus damages lungs; not printing presses. *Id.* at p. 5. The judge ruled, "New York law is clear that this kind of business interruption needs some damage to the property to prohibit you from going." *Id.* at p. 15.

Furthermore, as demonstrated, the CDC has instructed that the Coronavirus can be removed via cleaning. *Mastellone* recognizes that there is no direct physical loss when a substance can be removed via cleaning. In this regard, *Mastellone* is again consistent with U.S. law generally. *See, e.g.*, *Mama Jo's, Inc. v. Sparta Ins. Co.,* 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018)

("[W]ith regards to Plaintiff's initial claim for cleaning, cleaning is not considered direct physical loss."); *Universal Image Prods., Inc. v. Chubb Corp.*, 703 F.Supp.2d 705, 710 (E.D. Mich. 2010) (a complete cleaning of a ventilation system was not a direct physical loss), *aff'd*, 475 F. App'x. 569 (6th Cir. 2012).

### C. The Lack of a Virus Exclusion Is Irrelevant Because There Is No Direct Physical Loss

Plaintiff asserts that there is coverage because the Policy does not contain a virus exclusion. That assertion is legally incorrect. An exclusion can become relevant only if it is first determined that there is direct physical loss. This happens as part of the requirement of a Covered Cause of Loss. As shown, Covered Cause of Loss means all risks of direct physical loss that are neither excluded nor limited. Thus, if there is no direct physical loss in the first place, the existence or absence of a virus exclusion is irrelevant. For example, in *Ward General Insurance Services., Inc. v. Employers Fire Insurance Co.*, 114 Cal. App. 4th 548, 555 (2003), a computer database crashed. Because there was no direct physical loss, it was "unnecessary to analyze the various exclusions and their application to this case." Similarly, in *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.,* 17 F.Supp.3d 323, 333 (S.D.N.Y. 2014), a law firm closed because of a power outage. The loss of power was not a direct physical loss. Accordingly, it was unnecessary to decide whether a flood exclusion applied. *See also Zinser*, 2017-Ohio-5668, at ¶ 33, 2017 WL 2838393, at *7; *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 9, 751 N.Y.S.2d 4, 10 (2002).

In sum, there is no coverage here because there is no direct physical loss. For that reason, the absence of a virus exclusion is irrelevant.

### . Plaintiff's Breach of Duty of Good Faith/Fair Dealing Claim Should Be Dismissed

Plaintiff's claim for breach of the duty of good faith and fair dealing is without merit. (AP ¶¶ 69-77.) "The standard for [this] common law" claim "is the same as that for statutory ... [Texas Insurance Code] claims." *Jaramillo v. Liberty Mut. Ins. Co.*, 2019 WL 8223608, at 8 n.9 (N.D. Tex. Apr. 29, 2019) (citing *Progressive Cty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005)). No facts are pled that would allow an inference of anything more than a good-faith dispute over the scope of coverage. Plaintiff's claims are not covered under the plain terms of the Policy. They have not properly pled claims under the Texas Insurance Code. Plaintiff's corresponding common law claim fails as well. *Id.*

### III. There Is No Civil Authority Coverage

As established, the Policy's Civil Authority coverage only applies if there is a Covered Cause of Loss, meaning direct physical loss, to property other than the Plaintiff's property. Even then, there is only coverage if the following additional requirements are met: a) access to the area immediately surrounding the damaged property is prohibited civil authority as a result of the damage; and b) the action of civil authority is taken in response to dangerous physical conditions resulting from the direct physical loss. (FM 101 05 16 at pp. 18-19, 21). "[L]osses due to curfew and other such restrictions are not generally recoverable. . . . If a policy provides for business interruption coverage where access to an insured's property is denied by order of civil authority, access to the property must actually be specifically prohibited by civil order, not just made more difficult or less desirable." 11A *Couch on Ins.* § 167:15.

#### A. There Is No Direct Physical Loss To Other Property

Cincinnati has demonstrated that the plain language of the policy states that direct physical loss to property other than the Plaintiff's property is necessary. Courts in Texas and nationwide agree. *See Not Home Alone, Inc. v. Phila. Indem. Ins. Co.,* 2011 WL 13214381, at *6 (E.D. Tex.

Mar. 30, 2011); *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.,* 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008); *United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 131 (2d Cir. 2006); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.,* 2020 WL 886120, at *8 (D.S.C. Feb. 24, 2020).

Just as the Coronavirus is not causing direct physical loss to property at Plaintiff's premises, it is not causing direct physical loss to other property. The Complaint fails to identify any direct physical loss, anywhere. Rather, it alleges that because the State of Texas ordered nonessential businesses to close, Plaintiff was "unable to operate and use the restaurant for in-person dining". (AP ¶ 41; Pg. 10). Plaintiff's argument assumes that there were infected people on somebody's property at the time of the civil authority orders. However, these orders were put in place to keep people separated and thus reduce the spread of the virus even further. The purpose of the order was to ensure that people were practicing "social distance." No facts are alleged that demonstrate that the orders happened because of direct physical loss to Plaintiff's property, or surrounding properties. Instead, the order simply states that due to the virus' proclivity to attach to surfaces for prolonged periods of time; civil orders were necessary to protect the lives, health, welfare, and safety of the County's residents form the devastating impacts of the pandemic. (See AP ¶ 30; Pg. 8). Plaintiff offers no scientific basis for its statement that the virus caused any direct physical loss to the restaurants property.

After properly disregarding Plaintiff's repeated legal conclusions, there are no alleged facts asserting any direct physical loss. There are no alleged facts showing any change or alteration of anybody's physical property by the Coronavirus. There is, however, recommendations provided by the CDC that shows that the Coronavirus can be removed via proper cleaning. (*See* Exhibit B).

As established, this is the marker of something that is *not* direct physical loss. Accordingly, there is no direct physical loss to any other property as is required for Civil Authority coverage.

### B.     The Requisite Prohibition of Access Is Lacking

The Civil Authority coverage requires that access to Plaintiff's premises be ***prohibited*** by an order of Civil Authority. But, no government order issued in Texas prohibits access to Plaintiff's premises. Based on the lack of such a prohibition, there is no Civil Authority coverage.

"[C]ivil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property." *Dickie Brennan*, 636 F.3d at 686-87 (citations omitted); *see United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128, 131 (2d Cir. 2006); *S. Tex. Med. Clinics, P.A. v. CAN Fin. Corp.*, 2008 WL 450012, at 9 (S.D. Tex. Feb. 15, 2008). A "causal link" must exist between prior actual damage to nearby premises "and the action by a civil authority." *S. Tex. Med. Clinics*, 2008 WL 450012, at *10; *see Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.,* 2020 WL 886120, at *6(D.S.C. Feb. 24, 2020); *Not Home Alone, Inc. v. Phila. Indem. Ins. Co.*, 2011 WL 13214381 at *6 (E.D. Tex. Mar. 30), *report & recommendation adopted*, 2011 WL 13217067 (E.D. Tex. Apr. 8, 2011). No such situation is alleged here.

Plaintiff fails to plead the requisite causal link between actual damage to nearby premises and the prohibition on access. The Dallas County Orders, and Texas State Executive Orders issued by Governor Abbott, do not preclude access to the insured premises because of any alleged damage to other property, or Plaintiff's restaurant. Rather, those orders permit access. They supply several options to continue conducting business including, take-out options, to-go orders, and sales of wine beer and bottled spirits.

A causal relationship is also absent when civil action is taken due to fear of future harm, rather than prior actual physical damage. Thus, when construing similar policy language, Texas courts have rejected civil authority coverage where businesses had losses due to preventive governmental measures, such as pre- hurricane evacuations or the threat of terrorist attacks, before any physical damage occurred. *See Dickie Brennan*, 636 F.3d at 686–87; *S. Tex. Med. Clinics*, 2008 WL 450012, at *10; *Not Home Alone, Inc.*, 2011 WL 13214381, at *6-7; *United Air Lines*, 439 F.3d at 134-35; *Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, 2010 WL 4026375, at *3 (E.D. La. Oct. 12, 2010). Here, because the Dallas County Order was issued "due to imminent threat arising from COVID-19," and not because of prior "actual physical damage," Plaintiffs' "business interruption losses are not covered by [their] policy." *S. Tex. Med. Clinics*, 2008 WL 450012, at 10.

This position is also established by the law nationally. There is no Civil Authority coverage when the government order keeps people confined to their homes. *See Syufy Enterprises v. Home Ins. Co. of Indiana*, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995); *Brothers, Inc. v. Liberty Mutual Fire Insurance Co.,* 268 A.2d 611, 614 (D.C. 1970). In *Syufy*, there was a curfew to prevent rioting. Still, there was no civil authority coverage because access to the insured premises, a movie theater, was not prohibited. In *Brothers*, a curfew was ordered because of riots. However, although the curfew prevented a restaurant's customers from being out and about, it did not prohibit access to the restaurant's premises.

Furthermore, access to premises must be prohibited, not just limited. *See Schultz Furriers, Inc. v Travelers Casualty Insurance Co. of America*, 2015 WL 13547667, at *6 (N.J. Super. L. July 24, 2015); *Ski Shawnee, Inc. v. Commonwealth Ins. Co.,* 2010 WL 2696782, at *4 (M.D. Pa. July 6, 2010). In *Schultz*, there were serious traffic issues in lower Manhattan following

Superstorm Sandy. Nevertheless, there was no civil authority coverage because it was not completely impossible for the public to access the insured store. In *Ski Shawnee*, a bridge repair hindered or dissuaded the majority of customers from visiting a ski resort. *Ski Shawnee* holds that did not constitute prohibition of access to the premises. *See also Goldstein v Trumbull Ins. Co.*, 2016 WL 1324197, at *12 (N.Y. Sup. Ct. Apr. 05, 2016); *TMC Stores, Inc. v. Federated Mut. Ins. Co.*, 2005 WL 1331700, at *4 (Minn. Ct. App. June 7, 2005).

Because the Complaint's allegations establish access was not prohibited, the Civil Authority coverage does not apply.

## IV. The Texas Insurance Code Claims Fail As a Matter of Law

Claims alleging violations of the Texas Insurance Code are "subject to the heightened federal pleading requirements of Rule 9(b) because they are claims predicated on misrepresentations and fraud." *Brasher v. State Farm Lloyds*, 2017 WL 9342367, at *7 (W.D. Tex. Feb. 2, 2017) (Ezra, J.). Plaintiff's allegations do not meet Rule 9(b)'s burden because they fail to allege any "*particulars* of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* at 8. Accordingly, Plaintiff's allegations "fail to meet the plausibility federal pleading standard applied using a Rule 12(b)(6) analysis, much less the Rule 9(b) heightened fraud pleading standard," *id.* at 7, and should be dismissed.

### i. Plaintiff Fails To Plead Misrepresentation

Plaintiff's "Misrepresentation of Insurance Policies" claim (AP ¶ 82-86) should be dismissed because, where, as here, "the alleged misrepresentations concern a party's failure to fulfill its contractual duties, the alleged failure to perform these duties does not constitute a misrepresentation under the Texas Insurance Code ..., but is more properly raised as a breach of

contract claim." *Travelers Lloyds Ins. Co. v. Cruz Contracting of Tex., LLC*, 2017 WL 5202890, at *6 (W.D. Tex. Mar. 17, 2017) (Ezra, J.). Further, claims for "unfair settlement practices" under the Texas Insurance Code are only triggered when "the liability of the insurer is reasonably clear." *Primerica Life Ins. Co. v. Gross*, 2018 WL 2181101, at 11 (W.D. Tex. Mar. 27, 2018) (Ezra, J).

As discussed above, under the plain language of the Policy, Plaintiff's claims are not covered, and any representation to that effect was accurate and not a misrepresentation. *See Thomas v. State Farm Lloyds*, 218 F. Supp. 3d 506, 519 (N.D. Tex. 2016) (rejecting plaintiff's claim that "defendants misrepresented the Policy to them by explaining that it did not cover their claim" where in fact there was no coverage). Plaintiff's misrepresentation claim under the Texas Insurance Code should thus be dismissed.

### ii. Plaintiff Does Not Properly Plead A Violation Of The Prompt-Payment Act

Plaintiff's claim under various sections of Chapter 542 of the Texas Insurance Code, also known as the Texas Prompt Payment of Claims Act ("TPPCA"), should likewise be dismissed. (AP ¶¶ 78-81.) To state a claim under the TPPCA, "a plaintiff must show that ... the insurer is liable for the claim." *Primerica Life Ins. Co*., 2018 WL 2181101, at 8. As discussed above, Plaintiff cannot rightfully assert coverage under the plain terms of the Policy. Plaintiff's TPPCA claim should be dismissed.

### CONCLUSION

There is no possible coverage because the coronavirus does not cause direct physical loss and the Plaintiff does not allege otherwise. The Plaintiff has not alleged a claim on which relief can be granted. Accordingly, Cincinnati's Motion to Dismiss should be granted.

        Respectfully submitted,

        */s/ S. Jan Hueber*
        **S. Jan Hueber**
        State Bar No. 20331150
        Hueber@litchfieldcavo.com
        **Nicholas Rodriguez** State Bar No. 24094190
        RodriguezN@litchfieldcavo.com

        **LITCHFIELD CAVO, LLP**
        100 Throckmorton St., Ste. 500
        Fort Worth, Texas 76102
        Telephone: (817) 945-8025
        Facsimile: (817) 753-3232
        **ATTORNEYS FOR DEFENDANT**
        **THE CINCINNATI INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above pleading was served on this the 2nd day of June, 2020, on all counsel of record, by Email in accordance with the Federal Rules of Civil Procedure.

| | |
|---|---|
| ***Email**: sizadi@fflawoffice.com* | ***Email**: BBragalone@srsm.com* |
| Shauna A. Izadi | Robert A. Bragalone |
| State Bar No. 24041170 | State Bar No. 02855850 |
| sizadi@fflawoffice.com | BBragalone@grsm.com |
| Jason H. Friedman | Nathan D. Pearman |
| State Bar No. 24059784 | State Bar No. 24074872 |
| jason@fflawoffice.com | NPearman@grsm.com |
| FRIEDMAN & FEIGER LLP | GORDON & REES, LLP |
| 5301 Spring Valley, Suite 200 | 2200 Ross Avenue, Suite 3700 |
| Dallas, TX 75254 | Dallas, TX 75201 |
| **ATTORNEYS FOR PLAINTIFF** | **ATTORNEYS FOR DEFENDANT BARON CASS** |

      */s/ S. Jan Hueber*
      **S. Jan Hueber**