IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VANDELAY HOSPITALITY GROUP LP D/B/A HUDSON HOUSE, | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 3:20-CV-1348-D |
| VS. | § § | |
| THE CINCINNATI INSURANCE COMPANY, et al., | § § § | |
| Defendants. | § § | |

MEMORANDUM OPINION
AND ORDER

The court must again decide in this removed action whether plaintiff has plausibly pleaded a claim to recover under an "all risk" commercial property insurance policy for losses to its restaurants allegedly caused by COVID-19. Concluding that plaintiff has failed to allege facts demonstrating that it suffered a direct physical loss of or damage to its property, the court grants the insurer's Fed. R. Civ. P. 12(b)(6) motion and dismisses this action with prejudice.

I

Because this case is the subject of three prior opinions, the court will recount only the background facts and procedural history that are pertinent to today's decision.

Plaintiff Vandelay Hospitality Group LP d/b/a Hudson House ("Vandelay") sues defendant The Cincinnati Insurance Company ("Cincinnati") to recover under an "all risk" commercial property insurance policy ("Policy") for losses to three of its restaurants

allegedly caused by the COVID-19 pandemic.[1]  The Policy provided business interruption coverage for certain losses to Vandelay's restaurants for the period July 6, 2019 to July 6, 2020.  On March 12, 2020 the Governor of the State of Texas and the County Judge of Dallas County, Texas issued orders declaring a state of disaster due to the COVID-19 pandemic. The County Judge's order was amended on March 16, 2020 and prohibited access to any premises operated as dine-in restaurants and permitted only take-out dining services.  The next day, Vandelay announced that it would close its three restaurants until authorities decided that the danger from COVID-19 had passed.  Vandelay provided a notice of claim under the Policy to Cincinnati's agent the same day.  Cincinnati's agent submitted a reservation of rights letter to Vandelay, stating that the COVID-19 pandemic, without more, was not direct physical loss or damage to property sufficient to trigger Policy coverage.

Vandelay then brought this action in state court, alleging claims for breach of contract, violations of the Texas Insurance Code, and breach of the duty of good faith and fair dealing, and seeking a declaratory judgment that the Policy covered the business losses due to the COVID-19 pandemic and state and county orders.  The court dismissed Vandelay's state-court first amended petition for failure to plead a plausible breach of contract claim, concluding that it had failed to allege facts demonstrating that Vandelay suffered a direct physical loss or damage to its restaurants, and it granted Vandelay leave to replead. *Vandelay Hospitality Grp. LP v. Cincinnati Ins. Co.* (*Vandelay II*), 2020 WL 5946863 (N.D.

---

[1]*I.e.*, "coronavirus" or "SARS-CoV-2."

Tex. Oct. 7, 2020) (Fitzwater, J.).  After Vandelay filed a second amended complaint, Cincinnati moved again to dismiss for failure to state a claim on which relief can be granted. The court granted the motion, holding that Vandelay had failed to adequately allege that the presence of COVID-19 caused any distinct, demonstrable, physical alteration of the property so as to trigger coverage under any provision of the Policy, and it granted Vandelay a second opportunity to replead.  *Vandelay Hospitality Grp. LP v. Cincinnati Ins. Co.* (*Vandelay III*), 2021 WL 462105 (N.D. Tex. Feb. 9, 2021) (Fitzwater, J.).

Vandelay then filed the instant third amended complaint, alleging fifteen counts.  The six breach of contract counts (counts II, IV, VI, VII, X, and XII) are based, respectively, on the Policy's Business Income, Civil Authority, Extra Expense, Ingress and Egress, Dependent Property, and Sue and Labor provisions.  Each breach of contract claim is preceded by a corresponding declaratory judgment claim (counts I, III, V, VII, IX, and XI) based on the same provision.  The remaining three counts allege claims for breach of the duty of good faith and fair dealing (count XIII), violation of the Prompt Payment Act, Tex. Ins. Code Ann. § 542.055, *et seq*. ("TPPCA") (count XIV), and violations of various provisions of chapters 541 and 542 of the Texas Insurance Code (count XV).  Cincinnati moves to dismiss the third amended complaint for failure to state a claim on which relief can be granted.  Vandelay opposes the motion.  The court has heard oral argument.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's] amended complaint by 'accepting all well-pleaded facts as true, viewing them

in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Inc.*, 855 F.Supp.2d 615, 618 (N.D. Tex.2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration omitted)).  To survive Cincinnati's motion to dismiss under Rule 12(b)(6), Vandelay must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

III

The court turns first to Vandelay's breach of contract claims.

A

Cincinnati maintains that the third amended complaint does not allege that there was any distinct, demonstrable, physical alteration of Vandelay's property by COVID-19, but

- 4 -

instead incorrectly asserts that the presence of COVID-19 particles renders items of physical property unsafe and its premises unsafe; that COVID-19 cannot alter the structure of property even if it is present and can be removed by cleaning; that other district courts in the Fifth Circuit have uniformly held that the COVID-19 pandemic does not constitute "direct physical loss of or damage to" property, as have the majority of other federal courts; that the Policy covers lost business income and extra expense for a "period of restoration" that ends when the property is "repaired, rebuilt or replaced," which indicates that these coverages apply only to physical damage that requires that a property be rebuilt, repaired, or replaced; and that loss of use of the property does not constitute direct physical loss or damage under the Policy.

Vandelay responds that it has sufficiently pleaded that, due to COVID-19, it has suffered direct physical loss or damage of two distinct types: (1) its inability to fully operate its restaurants, and (2) "[t]he coronavirus physically caused property damage to Vandelay's tangible property due to its proclivity to attach [to] surfaces for prolonged periods of time." Resp. at 3 (citing 3d Am. Compl. ¶ 96). Vandelay maintains that the court must take the allegations of the third amended complaint as true and disregard Cincinnati's argument that COVID-19 can be removed by routine cleaning; that Vandelay has sufficiently pleaded that the presence of COVID-19 caused a distinct, demonstrable, physical alteration of its property by alleging that COVID-19 is a physical pathogen, attaches to surfaces, and alters the composition of surfaces; that by excluding coverage for damage due to bacterial contamination, the Policy implicitly covers damage caused at a cellular level by

contamination of microscopic organisms; that district courts in the Fifth Circuit have not uniformly rejected Vandelay's argument; and that Vandelay has adequately pleaded that it has lost the full use of its restaurants.

Cincinnati replies that Vandelay has not pleaded any facts showing that it suffered physical loss or damage to its restaurants, and, at most, alleges that the virus could have been present on its property and the use of its property was restricted; that many courts, including courts in this circuit, have held that COVID-19 does not cause physical damage to property; and that Policy exclusions are not relevant here because there is no coverage for Vandelay's claims, and there is no coverage if bacterial contamination can be cleaned.

B

Texas courts interpret insurance policies according to the rules of contract interpretation. *See Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 291 (5th Cir. 2005) (citing *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) ("Interpretation of insurance contracts in Texas is governed by the same rules as the interpretation of other contracts."). When a "contract is worded so that it can be given a definite meaning, it is unambiguous and a judge must construe it as a matter of law." *Int'l Ins.*, 426 F.3d at 291; *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). "In applying these rules, a court's primary concern is to ascertain the parties' intent as expressed in the language of the policy." *Int'l Ins.*, 426 F.3d at 291; *see also Forbau*, 876 S.W.2d at 133 ("[T]he court's primary concern is to give effect to the written expression of the parties'

- 6 -

intent."). The court must give effect to all of a policy's provisions so that none is rendered meaningless. *Int'l Ins.*, 426 F.3d at 291.

"Whether an insurance contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Int'l Ins.*, 426 F.3d at 291 (citing *Kelley-Coppedge*, 980 S.W.2d at 464). "If an insurance contract uses unambiguous language, [the court] must enforce it as written. If, however, a contract is susceptible to more than one reasonable interpretation, [the court] will resolve any ambiguity in favor of coverage." *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008) (footnotes omitted); *see also Nat'l Union Fire Ins. Co.*, 811 S.W.2d at 555.

## C

The Policy is an "all risk" policy that provides coverage for all losses—except for those that are expressly excluded—"caused by or resulting from any Covered Cause of Loss." D. App. at 28. A "Covered Cause of Loss" is defined as a "direct 'loss,'" and "loss" is defined as an "accidental physical loss or accidental physical damage." *Id.* at 30, 63. The Policy does not define "physical loss" or "physical damage."

Vandelay seeks payment under six provisions of the Policy: the Business Income, Civil Authority, Extra Expense, Ingress and Egress, Dependent Property, and Sue and Labor provisions.

- 7 -

The Business Income provision states:

> [Cincinnati] will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss.

*Id.* at 111.

The Civil Authority provision states:

> When a Covered Cause of Loss causes direct damage to property other than Covered Property at the "premises", [Cincinnati] will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply: (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property. Civil Authority coverage for "Business Income" will begin immediately after the time of the first action of civil authority that prohibits access to the "premises" and will apply for a period of up to 30 consecutive days from the date on which such coverage began.

*Id.* at 112.

The Extra Expense provision states:

> a. Extra Expense coverage is provided at the "premises" described in the Declarations only if the Declarations show that "Business Income" coverage applies at that "premises".

- 8 -

> b. Extra Expense means necessary expenses you sustain (as described in Paragraphs 2.c., d. and e.) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

*Id.* at 111.

The Ingress and Egress provision states:

> [Cincinnati] will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by the prevention of existing ingress or egress at a "premises" shown in the Declarations due to direct "loss" by a Covered Cause of Loss at a location contiguous to such "premises". However, coverage does not apply if ingress or egress from the "premises" is prohibited by civil authority.

*Id.* at 114.

The Dependent Property provision states:

> [Cincinnati] will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to "dependent property" caused by or resulting from any Covered Cause of Loss.
>
> "Dependent property" means property operated by others whom you depend on to: 1) Deliver materials or services to you, or to others for your account (Contributing Locations). . . . 2) Accept your products or services; 3) Manufacture products for delivery to your customers under contract for sale; or 4) Attract customers to your business.

*Id.* at 83-84.

The Sue and Labor provision states:

> Take all reasonable steps to protect the Covered Property from
> further damage.  If feasible, set the damaged property aside and
> in the best possible order for examination.  Keep a record of
> your expenses necessary to protect the Covered Property for
> consideration in the settlement of the claim.  This will not
> increase your limit of insurance.  However, in no event will we
> pay for any subsequent "loss" resulting from a cause of loss that
> is not a Covered Cause of Loss.

*Id.* at 115.

### D

The court begins by addressing the threshold issue of whether Vandelay has

sufficiently pleaded that it suffered direct physical loss or damage.

### 1

As the parties acknowledge, under any provision of the Policy, Cincinnati is only

obligated to pay for losses caused by a Covered Cause of Loss.[2]  A Covered Cause of Loss

is a direct, accidental, physical loss, or accidental, physical damage.  *See* D. App. at 30, 63.

Because the Policy does not define the term "physical" or "loss," the court looks to the plain

meaning of these words.  *See de Laurentis v. United Servs. Auto. Ass'n*, 162 S.W.3d 714,

722-23 (Tex. App. 2005, pet. denied).  "'Loss' signifies 'the act of losing or the thing lost;

it is not a word of limited, hard and fast meaning and has been synonymous with or

---

[2]The Business Income, Civil Authority, Extra Expense, Ingress and Egress, and
Dependent Property provisions are all predicated on a Covered Cause of Loss.  As explained
*infra* at § III(E), the Sue and Labor provision does not provide coverage; it imposes an
obligation on Vandelay.

equivalent to, "damage."'" *Id.* at 723 (quoting BLACK'S LAW DICTIONARY 945 (6th ed. 1990)). "A physical loss is simply one that relates to natural or material things." *Id.* (citing WEBSTER'S THIRD NEW INT'L DICT. 1706 (1993)).

"Although the Fifth Circuit has yet to address whether COVID-19 and related civil authority orders can qualify as a physical loss of or damage to property under property insurance policies, district courts in this Circuit have determined that they do not." *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, ___ F.Supp.3d___, 2021 WL 972878, at *6 (W.D. Tex. Jan. 21, 2021) (citing *Diesel Barbershop, LLC v. State Farm Lloyds*, 505 F.Supp.3d 646 (W.D. Tex. 2020), and *Sultan Hajer d/b/a Rug Outlet v. Ohio Sec. Ins. Co.*, 479 F.Supp.3d 353 (E.D. Tex. 2020)). One district court recently summarized the current state of the law in this circuit:

> This court finds no ambiguity in the requirement that the premises suffer a physical loss or damage (regardless of whether "physical" modifies just loss), or in its implications for coverage in this matter. As the Fifth Circuit has noted, "property insurance coverage is triggered by some threshold concept of physical loss or damage to the covered property." *Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006). It has also observed that "[t]he language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper." *Trinity Indus. Inc., v. Ins. Co. of N. Am.*, 916 F.2d 267, 270-71 (5th Cir. 1990). To this end courts within the Fifth Circuit have required a "distinct, demonstrable, physical alteration of the property" to trigger coverage. *Diesel Barbershop LLC v. State Farm Lloyds*, 479 F.Supp.3d 353, 360 (W.D. Tex. 2020) (quoting *Hartford*, 181 F. App'x at 470). Accordingly, every district court within the circuit to address the issue has determined that a building's

- 11 -

exposure to the coronavirus does not meet this requirement. *Id.; see also Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, ___ F.Supp.3d. ___, 2021 WL 972878, at *5 (W.D. Tex. 2021). LBJC fails to advance any new argument compelling the court to depart from this interpretation, and therefore cannot state a plausible claim for relief under the Business Income/Extra Expense endorsements.

*Lafayette Bone & Joint Clinic, Inc. v. Transp. Ins. Co.*, 2021 WL 1740466, at *3 (W.D. La. May 3, 2021).

2

The court holds that Vandelay has not plausibly pleaded that it suffered a direct physical loss or damage so as to trigger coverage under the Policy.

Assuming *arguendo* that Vandelay has adequately alleged that COVID-19 was present in its restaurants, it has not sufficiently alleged that COVID-19 caused a distinct, demonstrable, physical alteration to the restaurants. In this respect, Vandelay asserts:

> 95. . . . At least one (1) member of the Vandelay staff contracted COVID-19 while working on the covered property. It is thus an absolute certainty that covered property has been infiltrated and contaminated by the coronavirus — and likely others.

> 96. The coronavirus contaminated Vandelay's premises, causing direct physical loss to the property, as the coronavirus impaired the Restaurants and made the premises unusable in the way that they had been used before contamination. It is clear that Vandelay, its Restaurants and related premises were in an initial satisfactory state that was changed by some external event into an unsatisfactory state. Instead of being able to fill the Restaurants with employees and customers, Vandelay was required to drastically reduce operations and even close entirely at one point. Drakes and the two buildings directly connected to it Ellis Hill an upscale stationer/gift shop and Spa in the City a premier med spa were all damaged by the coronavirus and

- 12 -

forced to cease operations. The businesses directly connected to Hudson House were also forced to cease operations. The coronavirus is physically causing property damage due to its proclivity to attach surfaces for prolonged periods of time and regardless of whether you wipe down everything on the premises it can simply come back. Due to the physical damage from the coronavirus, it caused Vandelay's Restaurants as well as the surrounding businesses on the premises to cease operations as Vandelay was unable to use its interior space in the way that they had previously used its space. The physical damage to Vandelay's property includes the loss of function of the premises and a diminishment of the physical space in the restaurants, both as a result of the Orders and a result of the premises being contaminated by the coronavirus. The direct physical loss of and damage to property at Vandelay's Restaurants resulted in necessary interruption of Vandelay's business, lost income, extra expenses, and other covered losses under the Policy.

108. At the very least, Vandelay suffered a physical loss of the covered property as a result of the coronavirus and the mandated orders and actions taken to limit the impact of the pandemic. As a result of the coronavirus, and the emergency orders, Vandelay not only suffered a loss, but it also caused physical property damages to the Vandelay's insured locations. These losses include, but are not limited to the coronavirus attaching to the surfaces of the insured's locations for prolonged periods of time, physical contamination of the entire insured premises, and the coronavirus infecting Vandelay's employees and customers.

109. The presence of the coronavirus and the Closure Orders caused direct physical loss of or damage to the covered property or "premises" under the Policy, by denying use of and damaging the covered property and by causing a necessary suspension of operations during a period of restoration.

113. To reduce the spread of the disease, the CDC has recommended that businesses clean and disinfect all surfaces, prioritizing the most frequently touched surfaces, which Vandelay has done to the premises.

- 13 -

114. Additionally, the Policy requires Vandelay "[t]o take all reasonable steps to protect the Covered Property from further damage" when a loss occurs, which in this instance required Vandelay to suspend operations to reduce the spread of COVID-19 and to prevent further losses occasioned by its spread on Vandelay's premises.  Vandelay has taken such steps, including complying with all government orders relating to COVID-19, which included suspension of business, disinfection of premises, and social distancing/limiting the number of patrons on premises.

3d Am. Compl. ¶¶ 95-96, ¶¶ 108-109, ¶¶ 113-114.

Even if Vandelay has sufficiently alleged that COVID-19 was present in its restaurants, it has not adequately alleged that COVID-19 caused physical damage or loss. Vandelay repeatedly makes the conclusory assertion that it suffered physical loss and damage.  But it fails to specify what damage or loss was caused, aside from the presence of COVID-19 on the property and COVID-19's "proclivity to attach [to] surfaces for prolonged periods of time." *Id.* at ¶¶ 95-96.  Despite the repeated use of the word "physical," the third amended complaint does not plausibly plead that Vandelay's property suffered a distinct, demonstrable, physical alteration.  *See Diesel Barbershop LLC*, 479 F.Supp.3d at 360 (quoting *Hartford*, 181 Fed. Appx. at 470).

Moreover, as Cincinnati notes and Vandelay acknowledges, COVID-19 can be removed from surfaces by routine cleaning.  *See* 3d Am. Compl. ¶¶ 96, 113 (alleging that Vandelay has cleaned and disinfected all surfaces to reduce the spread of COVID-19).  The mere presence of the virus on Vandelay's property does "not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be

- 14 -

eliminated.  The virus does not threaten the structures covered by property insurance policies and can be removed from surfaces with routine cleaning and disinfectant."  *ILIOS Prod. Design, LLC v. Cincinnati Ins. Co.*, 2021 WL 1381148, at *7-8 (W.D. Tex. Apr. 12, 2021) (quoting *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 504 F.Supp.3d 1191, 1203-04 (D. Kan. 2020), and *Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F.Supp.3d 878, 883-84 (S.D. W.Va. 2020) (holding that "[n]o repairs or remediation to the premises are necessary for its safe occupation in the event the virus is controlled and no longer poses a threat.  In short, the pandemic impacts human health and human behavior, not physical structures.")); *see also Terry Black's Barbecue, LLC*, ___ F.Supp.3d___, 2021 WL 972878, at *4-5 (same).

For example, Vandelay alleges that COVID-19 causes property damage because "regardless of whether [a person] wipe[s] down everything on the premises[,] it can simply come back"; in other words, COVID-19 can be removed from property without lasting damage, but surfaces may be re-infected.  3d Am. Compl. ¶ 96.  In Vandelay's view, the presence of any contagious virus—e.g., the common cold or the flu—constitutes covered damage under the Policy to the extent it is harmful to human health.  But Vandelay has not alleged anything about COVID-19 itself that has threatened the physical structures of its restaurants.  *See DZ Jewelry, LLC v. Certain Underwriters at Lloyds London*, ___ F.Supp.3d ___, 2021 WL 1232778, at *5 (S.D. Tex. Mar. 12, 2021) (Rosenthal, C.J.) (citing cases and holding that "[e]ven if [plaintiff] had alleged facts showing that COVID-19 was detected in its store . . . courts considering similar claims have repeatedly stated that COVID-19 does not

cause physical damage to property; it causes people to get sick.").

Accordingly, as in *Vandelay II* and *III*, Vandelay has not plausibly pleaded claims for breach of contract under the Business Income, Civil Authority, Extra Expense, Ingress and Egress, and Dependent Property provisions.

E

Vandelay has also failed to state a claim for breach of the "Sue and Labor" provision of the Policy. This provision obligates Vandelay to "[t]ake all reasonable steps to protect the covered property from further damage. If feasible, set the damaged property aside and in the best possible order for examination." D. App. at 115.

The court agrees with Cincinnati that the Sue and Labor provision does not provide additional coverage. Instead, it is best characterized as a duty imposed on Vandelay as the insured to prevent further damage in the event of a covered loss. As one court has noted, this type of provision is "plainly not a coverage provision." *Promotional Headwear Int'l*, 504 F.Supp.3d at 1206.

F

The court therefore grants Cincinnati's motion to dismiss to the extent it seeks dismissal of Vandelay's breach of contract claims.

IV

The court now turns to Vandelay's other claims.

A

Vandelay's declaratory judgment claims are also subject to dismissal. Vandelay seeks

- 16 -

declarations that it has suffered insured losses under the Policy as covered by the Business Income, Civil Authority, Extra Expense, Ingress and Egress, Dependent Property, and Sue and Labor provisions, and that Cincinnati is obligated to pay for the full amount of these losses incurred related to COVID-19 and the Orders.[3]  These declarations track Vandelay's breach of contract claims.[4]  For the same reasons that Vandelay has failed to plausibly allege claims for breach of the Policy, it has also failed to plausibly allege a declaratory judgment claim.

B

Even had Vandelay alleged a plausible claim for breach of the Policy, its declaratory judgment claims are still subject to dismissal.

"When a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202."  *Redwood Resort Props., LLC v. Holmes Co.*, 2007 WL 1266060, at *4 (N.D. Tex. Apr. 30, 2007) (Fitzwater, J.). The declaratory judgments that Vandelay seeks overlap with the allegations underlying its contract claims and will be "resolved in the context of [Vandelay's] breach of contract action[.]" *Xtria LLC v. Tracking Sys., Inc*., 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007) (Fitzwater, J.) (citation omitted).  Accordingly, Vandelay's declaratory judgment claims are subject to dismissal as

---

[3] Counts I, III, V, VII, IX, and XI, respectively.

[4] Counts II, IV, VI, VIII, and X, respectively.

- 17 -

well.  *See Kougl v. Xspedius Mgmt. Co. of Dall./Fort Worth, L.L.C.*, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) (Fitzwater, J.) (dismissing claims for declaratory relief when they would be resolved in context of breach of contract actions); *Landscape Design & Constr., Inc. v. Transport Leasing/Contract, Inc.*, 2002 WL 257573, at *10 (N.D. Tex. Feb. 19, 2002) (Fitzwater, J.) (dismissing declaratory judgment action that sought resolution of substantive claims that were already basis of lawsuit).

C

Regarding the claim that Cincinnati violated the TPPCA by failing to promptly pay Vandelay's claim, "an insurer is not subject to TPPCA damages for delayed payment unless it was subject to a payment deadline because it owed benefits under the policy." *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 823 (Tex. 2019).  Because Vandelay has failed to plausibly plead that Cincinnati owed benefits under the Policy, Vandelay has also failed to plausibly plead a claim under the TPPCA.

D

As for Vandelay's claim that Cincinnati violated various provisions of chapters 541 and 542 of the Texas Insurance Code, the general rule is that an insured cannot recover policy benefits as actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 495 (Tex. 2018).  Because Vandelay has not plausibly pleaded that it is entitled to Policy benefits, it has also failed to plausibly allege a claim for violations of the Texas Insurance Code.

\*   \*   \*

For the foregoing reasons, the court grants Cincinnati's motion to dismiss and enters judgment dismissing this action with prejudice.

**SO ORDERED**.

July 13, 2021.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE